UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENAILA ROSETTA SIX,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Robert J. Jonker

Case No. 1:21-cv-841

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed applications for DIB and SSI on March 1, 2019, alleging that she had been disabled since January 1, 2019, due to degenerative disc disease in the lower back, neck issues,

and numbness in her arms. (PageID.152–53, 298–301, 305–09.) Plaintiff was previously awarded DIB and SSI following a favorable decision on August 31, 2012. (PageID.122–27.) However, her benefits were terminated on November 8, 2018, due to her failure to comply with the agency's attempts to develop the record to evaluate her impairments. (PageID.130–47, 150, 152–57.) Plaintiff was 41 years old at her alleged onset date and at the time she filed her applications. (PageID.69.) Plaintiff had completed high school. (PageID.125.) She had previous employment as a paralegal and a secretary. (PageID.46.) Plaintiff's applications were denied on July 26, 2019 (PageID.168, 170), after which she requested a hearing before an Administrative Law Judge (ALJ).

On August 11, 2020, ALJ William G. Reamon held a hearing and received testimony from Plaintiff and Richard Riedl, an impartial vocational expert. (PageID.55–104.) On September 29, 2020, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.37–48.) The Appeals Council denied Plaintiff's request for review on August 3, 2021. (PageID.23–25.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on September 29, 2021.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

 2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through March 31, 2024, and had not engaged in substantial gainful activity since her alleged onset date,

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

January 1, 2019, the ALJ found that Plaintiff suffered from severe impairments of lumbar spine L5-S1 disc extrusion contact S1 nerve roots, disc osteophyte complex with stenosis and flattening of L5 nerves; cervical spine stenosis at C5-6 and C6-7 levels; and bilateral carpal tunnel syndrome. (PageID.41.) The ALJ found that Plaintiff's obesity, major depressive disorder, opioid use disorder, and stimulant use disorder were nonsevere. (PageID.41.) In evaluating whether Plaintiff's mental impairments were severe, the ALJ considered the "paragraph B" factors reflecting the four broad areas of mental functioning. The ALJ found that Plaintiff was mildly limited in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (PageID.41–42.) He found that Plaintiff had no limitation in the area of interacting with others. (PageID.41.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42.) The ALJ considered listing 1.04 (Disorders of the Spine) and evaluated Plaintiff's carpal tunnel syndrome under listing 11.14. (PageID.42–43.)

The ALJ found that Plaintiff had the RFC to perform light work withing the meaning of 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations:

> [S]he could perform walk/stand activities for up to two hours in an eight-hour workday; she would require a sit/stand option for every 15 to 30 minutes; she could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, and crawl; she could frequently bilateral handle and finger; she could have no exposure to operation of dangerous moving machinery and unprotected heights; and she should avoid concentrated exposure to vibration.

(PageID.43.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as actually or generally performed. (PageID.46.) At step five, however, the ALJ found that an

individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of office helper, production inspector, and production assembler, approximately 360,000 of which existed in the national economy. (PageID.46–47.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## **DISCUSSION**

Plaintiff raises three issues in her appeal: (1) the ALJ erred as a matter of law in not treating her DIB and SSI claims as a cessation of benefits case; (2) the ALJ's decision that Plaintiff was not disabled during the period at issue lacks substantial evidence; and (3) the ALJ erred as a matter of law in finding that Plaintiff's mental health diagnosis was not a severe impairment. (ECF No. 10 at PageID.1206.)

**I.     Proper Disability Standard**

Plaintiff contends that the ALJ erred in evaluating her claims for DIB and SSI under the five-step sequential evaluation process for evaluating initial disability claims in adults, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), and instead should have evaluated the case as a cessation of benefits case under 20 C.F.R. §§ 404.1594 and 416.944, using the medical improvement standard. As noted above, however, the Commissioner discontinued Plaintiff's benefits in November 2018 following a continuing disability review because Plaintiff failed to comply with the agency's attempts to develop the medical record it needed to assess her continuing entitlement to disability benefits. 20 C.F.R. §§ 404.1594(e)(2), 416.944(e)(2). Plaintiff was no longer receiving benefits and had applied for benefits for a new period of disability commencing January 1, 2019. The ALJ thus properly evaluated her entitlement to benefits anew under the five-step sequential evaluation process for initial claims. *See Oduro v. Kijakazi*, No. 3:21-cv-78, 2022 WL 1215076,

at *4 (M.D. Pa. Apr. 25, 2022) ("Because this case involved new applications for benefits, rather than a continuing disability review, the ALJ properly applied the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520 and 416.920, rather than the seven-step 'medical improvement' standard provided in 20 C.F.R. § 416.994 for continuing disability reviews."); *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1309 (D. Kan. 2007) (concluding that because the plaintiff had filed new applications after her benefits were terminated following incarceration for 12 consecutive months, the ALJ properly applied the five-step sequential evaluation process rather than the medical improvement standard for continuing disability review).

Plaintiff contends that she was struggling with personal issues such as homelessness, mental health issues, and substance abuse that made it difficult for her to comply with the continuing disability review requirements. Plaintiff does not cite evidence to substantiate mental incapacity around the time her benefits were terminated. She testified at the August 11, 2020 hearing that she had not used heroin since September 2018. (PageID.72, 78.) And even if Plaintiff was experiencing mental health issues during that time and in the following months when she could have appealed the termination of benefits, *see* 20 C.F.R. §§ 404.933(b)(1), 416.1433(b), Plaintiff still demonstrated the wherewithal to file new DIB and SSI applications around the same time. Moreover, even though Plaintiff was represented at the hearing by her same counsel who filed this appeal, she never requested that the prior determination that her disability ended in November 2018 be reopened and revised. Finally, Plaintiff's new applications did not function as an appeal of the November 2018 termination. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) ("Claimant may not use . . . later applications for benefits as an attempt to circumvent the appeal requirements for a termination of benefits. The medical improvement standard applies only in termination cases, not in later applications for benefits.").

7

Accordingly, the ALJ did not err in not applying the medical improvement standard to Plaintiff's new applications.

## II. Mental Impairment Findings

Plaintiff contends that the ALJ erred in finding that her mental impairments were nonsevere at step two. She notes that she has a long history of diagnosed mental impairments going back to the 2012 ALJ opinion; has been prescribed several mental health medications, including Trazadone, Vistaril, Buspar, Loratadine, and Effexor; and has receive mental health treatment through Newaygo County Community Mental Health. (ECF No. 10 at PageID.1209–10.) Plaintiff contends that the evidence clearly indicates that her mental health impairments are severe impairments because they significantly limit her ability to perform basic work activities. (*Id.* at PageID.1210.)

A "severe impairment" is defined as an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1522(a), 416.922(a). An impairment is considered non-severe "only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Upon determining that a claimant has one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment

does not constitute reversible error. *Maziarz*, 837 F.2d at 244. As the Sixth Circuit explained more recently:

> Though the ALJ concluded that Hedges did not have any severe mental-health impairments, the ALJ did find that Hedges suffered from four severe physical impairments. And once an ALJ finds that a claimant has at least one severe impairment at step two of the disability analysis, the ALJ must then "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe" in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e) (emphasis added). That is what the ALJ did here. So whether the ALJ characterized Hedges' mental-health impairments as severe or non-severe at step two is "legally irrelevant" and does not amount to error.

*Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

Here, the ALJ found that Plaintiff had severe lumbar and cervical spine impairments and that her bilateral carpal tunnel syndrome was severe. (PageID.41.) Thus, it was "legally irrelevant" that the ALJ did not find Plaintiff's mental impairments severe. *Id.*

Regardless, as noted above, the ALJ considered the "paragraph B" factors and found that Plaintiff had only mild limitations the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself, and no limitation in the area of interacting with others. In support of these findings, the ALJ cited Plaintiff's own statements, including her reported daily activities, her generally normal mental status exam findings, and the effectiveness of her medications in controlling her anxiety and improving her mood. (PageID.41–42, 673, 919, 976, 1063, 1108, 1151, 1157, 1163, 1183, 1191, 1195.) This evidence constitutes substantial evidence. Plaintiff does not argue otherwise, but simply cites the 2012 ALJ decision and her diagnoses. However, the 2012 decision awarding benefits is not pertinent, as the ALJ was tasked with considering Plaintiff's impairments in 2019, rather than 2012. Moreover, the mere diagnosis of a condition does not justify relief. *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . of course, says

9

nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Plaintiff's diagnoses, by themselves, provide no basis for mental functioning limitations.

Finally, although the ALJ did not include mental limitations in his RFC finding, review of his decision shows that he considered all of Plaintiff's medically determinable impairments, including her mental impairments, at subsequent steps of the sequential evaluation process. For example, in discussing the opinion evidence, the ALJ noted that at a recent appointment in July 2019, Plaintiff was cooperative and pleasant and stated that her medication helped a great deal with her mood. (PageID.45, 1195.)  The ALJ also recognized that, when assessing Plaintiff's RFC, he was required to consider all impairments, both severe and nonsevere. (PageID.40 (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).) *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (noting that "an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p"). Finally, the Sixth Circuit has emphasized that an ALJ's decision is to be read as a whole, and the ALJ is not required to restate his factual analysis throughout the decision. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision"). While the ALJ did not exhaustively discuss Plaintiff's mental impairments in his RFC discussion, his step two analysis adequately demonstrates that he

considered whether they caused any functional limitations and concluded that they did not. *See Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-cv-1250, 2019 WL 3315155, at *10 (S.D. Ohio July 24, 2019), *report and recommendation adopted*, 2019 WL 3753823 (S.D. Ohio Aug. 8, 2019) (ALJ's step-two discussion adequately demonstrated her basis for concluding that the plaintiff's unspecified depressive disorder did not warrant additional limitations).

This claim of error should be rejected.

### III.    RFC Finding

Plaintiff's final argument is that the ALJ's RFC finding was not supported by substantial evidence. She contends that the ALJ committed three errors in this regard: (1) the ALJ failed to include limitations for her psychological issues; (2) the evidence confirmed worsening of her lumbar and cervical spine conditions since the 2012 decision finding her disabled; and (3) the ALJ improperly determined Plaintiff's RFC without a medical opinion.

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996 WL 374184, at *1 (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3); *see also Reynolds v. Saul*, No. 4:20-CV-83, 2021 WL 2169091, at *4 (W.D. Ky. May 27, 2021) ("The RFC finding is based on a consideration of medical opinions and all other evidence in the case record, including a claimant's subjective statements about his impairments."). The ALJ's RFC determination must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

11

First, regarding the lack of mental limitations, as discussed above, the ALJ appropriately determined that Plaintiff's mental impairments were nonsevere and did not warrant specific nonexertional limitations because they did not significantly limit Plaintiff's ability to do basic work activities. The ALJ's decision in this regard was supported by substantial evidence.

Second, regarding Plaintiff's physical limitations, the ALJ's decision shows that he fully considered Plaintiff's hearing testimony regarding her impairments and symptoms, the imaging and clinical findings of record during the relevant period, and other evidence in determining that Plaintiff's back impairments and symptoms did not preclude an ability work with limitations. (PageID.43–45.) The only evidence Plaintiff cites as supporting greater limitations is a need for surgery. This recommendation was made in 2014 (PageID.429), but there was no surgical recommendation from the relevant period. The recommending doctor had advised that Plaintiff would need to quit smoking in order to have the surgery. (*Id.*) However, Plaintiff did not quit smoking and did not have the surgery. (PageID.69.) The ALJ thus had reason to conclude that Plaintiff's symptoms were not as severe as she had alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1998) (a claimant's failure to follow prescribed medical treatment is evidence bearing on the extent and disabling effects of the claimant's symptoms); *Barbera v. Comm'r of Soc. Sec.*, No. 11-cv-13265, 2012 WL 2458284, at *15 (E.D. Mich. June 5, 2012), *report and recommendation adopted*, 2012 WL 2389977 (E.D. Mich. June 25, 2012) (the ALJ's observation that the plaintiff's failure to quit smoking as a precondition of back surgery suggested that her complaints of pain were overstated was a proper basis for discounting her credibility). While the recent imaging evidence did show that Plaintiff's back impairments continued to worsen, other evidence suggested that her functional capacity actually improved. For example, the previous ALJ decision mentioned that Plaintiff's treating physician said that Plaintiff

required a wheelchair (PageID.125), but there was no medical evidence from the relevant period documenting such a need. And while Plaintiff testified that she used a cane and a walker (PageID.67), she was observed to be using a cane only on one occasion. (PageID.967.) In addition, Plaintiff's back symptoms were treated with conservative measures, such as physical therapy. (PageID.44, 682 (reporting that physical therapy had "really helped with her mobility")). In short, substantial evidence supports the ALJ's RFC determination. Plaintiff's mere disagreement based a different interpretation of the evidence is insufficient to warrant relief. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Plaintiff's final contention, that the ALJ inappropriately "created an RFC and limitation by his own unilateral interpretation of the medical records," lacks merit. (ECF No. 10 at PageID.1209.) It is the ALJ, not a physician, who is charged with the responsibility of determining a claimant's RFC based on the evidence as a whole. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding"). "Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 3172717 (S.D. Ohio July 25, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)). Therefore, the ALJ properly formulated his RFC on the entire record, and the absence of a corresponding medical opinion is of no moment. *See Van Pelt v. Comm'r of Soc. Sec.*, No. 1:19 CV 2844, 2020 WL 7769729, at *12 (N.D. Ohio Dec. 30, 2020) ("If it can be supported for an ALJ to reject all medical opinion evidence of record and formulate an RFC based on the

record as a whole, then it certainly can also be supported for an ALJ to rely (in part) on outdated medical opinions without obtaining updated opinion evidence, so long as the ALJ's ultimate decision is supported by substantial evidence.") (citing *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018), and *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009)).

Therefore, this claim of error lacks merit.

## CONCLUSION

For the reasons stated herein, I recommend that the Commissioner's decision be **affirmed.**

Dated: September 12, 2022                                              /s/ Sally J. Berens
                                                                                              SALLY J. BERENS
                                                                                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).